

FILED

JUN - 3 2010

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

RASHIYDA BLAINE,
c/o A.D.[1],

       Plaintiff,

v.                                    Case No. 4:09cv104

MICHAEL J. ASTRUE, Commissioner of
the Social Security Administration,

       Defendant.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Rashiyda Blaine[2] ("Blaine"), on behalf of A.D., her minor son, brought this action under 42 U.S.C. § 1383(c)(3), which incorporates Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") terminating A.D.'s Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act").

This action was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C.

---

[1] Pursuant to Local Civil Rule 7(C), only the initials of the minor child are used herein.

[2] In the administrative record, A.D.'s mother is referred to as "Rashiyda Justice" in earlier documents and as "Rashiyda Blaine" in later documents. The change in surnames is because A.D.'s mother was married between his initial application and the most recent social security decision in his case. To avoid confusion, A.D.'s mother will be referred to as "Blaine" throughout this Report and Recommendation.

§ 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 72 of the Local Civil Rules of the United States District Court for the Eastern District of Virginia, by order of reference filed October 28, 2009. For the reasons expressed herein, the Court RECOMMENDS that the Commissioner's decision be AFFIRMED.

## I. **FACTUAL AND PROCEDURAL BACKGROUND**

On or about July 26, 2001,[3] Blaine filed an application for child's supplemental security income payments under Title XVI of the Act on behalf of her minor son, A.D. (R.[4] at 63-65.) Blaine alleged that her son, who was five-years old at the time, was disabled since birth due to attention deficit hyperactivity disorder (ADHD). (R. at 63.) On November 6, 2001, the Commissioner determined that A.D. was disabled as of July 1, 2001, due to attention deficit hyperactivity disorder, and he was awarded child's supplemental security income benefits. (R. at 31.)

In 2006, the Commissioner reviewed A.D.'s case to determine if his condition improved, and whether he continued to be eligible to

---

[3] It appears that the application was generated on July 16, 2001, and signed by Blaine on July 19, 2001. (R. at 63-65.) However, multiple documents indicate that Blaine filed the application on July 26, 2001. (R. at 31-32, 66.)

[4] "R." refers to the transcript of the administrative record of proceedings relating to this case.

receive SSI benefits.[5]  On September 5, 2006, the Commissioner issued an initial determination finding that A.D.'s disability ceased on October 1, 2005, because there was insufficient evidence "to determine whether disability continues due to [his mother's] failure to cooperate with the disability review process." (R. at 33-35, 222-27.)  On September 22, 2006, Blaine requested reconsideration of the decision. (R. at 57-58.)  On reconsideration, the disability hearing officer considered new evidence from A.D.'s school, medical records from A.D's chiropractor, and the testimony of Blaine and A.D. given during a hearing held on April 10, 2007. (R. at 50-56.)  On May 18, 2007, the disability hearing officer issued a decision finding that there was medical improvement in A.D.'s impairment since he was awarded benefits in 2001, and that his impairment no longer met or medically equaled Listing 112.11. (R. at 52.)  The disability hearing officer then determined that A.D. suffered from the severe

---

[5]  For cases involving benefits for disabled children, the Social Security Act provides that "[n]ot less frequently than once every 3 years, the Commissioner shall review . . . the continued eligibility for benefits . . . of each individual who has not attained 18 years of age and is eligible for such benefits by reason of an impairment (or combination of impairments) which is likely to improve." 42 U.S.C. § 1382c(a)(3)(H)(ii)(I).

There is no indication in the administrative record or any of the pleadings that A.D.'s case was reviewed in 2003, which would have been three (3) years after A.D. was awarded benefits. Furthermore, the ALJ found that the most recent favorable decision was the November 6, 2001 determination awarding A.D. SSI benefits. (R. at 16.)  Accordingly, the Court assumes that no continuing review decision was previously conducted in this case.

3

impairment of attention deficit hyperactivity disorder, but that his impairment did not meet, medically equal, or functionally equal the Listings because he had "a marked limitation" in only one (1) domain—attending and completing tasks. (R. at 53-54.) Accordingly, the disability hearing officer determined that A.D. was "not disabled, but with a later cessation date" of May 1, 2007. (R. at 36, 54.)

On September 6, 2007, Blaine requested a hearing before an Administrative Law Judge ("ALJ") of the Social Security Administration. (R. at 43-46.) That hearing was held in Newport News, Virginia, on April 15, 2008. (R. at 26, 234.) Blaine testified at the hearing (R. at 13, 236-57); she chose to proceed at the hearing without the assistance of an attorney or other representative (R. at 13, 237-40). A.D. was not present at the hearing. (R. at 13, 234.)

In addition to Blaine's hearing testimony, the ALJ considered the following evidence regarding A.D.'s condition since he was initially awarded SSI benefits in 2001:

1. A consultative examination conducted by Dr. Manuel M. Chaknis, Ph.D., a licensed clinical psychologist, on May 2, 2007. (R. at 228-33.) Dr. Chaknis conducted a records review, examined A.D., and administered an intelligence test. This examination was performed at the request of the Division of Disability Services (DDS). (R. at 228.)

4

Dr. Chaknis found A.D. to be in good health, although he has a history of asthma.  (R. at 229.)  He noted that A.D.'s mother discontinued his use of medications to treat his ADHD in 2004 and was "adamantly opposed to the issue of any medications for him." (R. at 229-30, 233.)  At the time of the examination, A.D. was being treated with chiropractic manipulation.  (R. at 229, 233.) Blaine reported that A.D. "has no school behavioral problems" and "gets along well at school with his peers."  (R. at 230.)  A.D. stated that "he likes school and his teachers," but that "the other kids call him names and tease him about his speech."  (R. at 230.)

Dr. Chaknis observed that A.D. was "alert and oriented," "helpful," "gentle but odd," "well groomed," and seemed to establish ready rapport.  (R. at 231.)  However, "[h]is walk, movements and gestures were remarkable for much restlessness, fidgeting and purposeless activities."  (R. at 231.)  Dr. Chaknis also noted that A.D. "displayed attentional difficulties and distractibility," "much inappropriate smiling," and limited insight.  (R. at 231.)  During testing, Dr. Chaknis observed that A.D. "talked endlessly to himself," "[h]is attentional focus and maintenance was quite variable," and "[h]is work pace was erratic." (R. at 231.)

During the evaluation, Dr. Chaknis administered the Wechsler Intelligence Scale for Children-Fourth Edition (WISC-IV).  (R. at 228, 231-32.)  A.D.'s scores ranged from Low Average to Extremely

5

Low, with a Full Scale IQ of 67. (R. at 231.) A.D.'s "Processing Speed was assessed as Extremely Low with blatantly obvious dawdling, distraction and inefficiency evident." (R. at 232.) When compared to A.D.'s performance on the WISC-IV administered by Dr. Wayne Smith in 2004, his Processing Speed, Full Scale IQ, and Verbal Skills scores were unchanged, his Perceptual Reasoning score increased one standard deviation, and his Working Memory score decreased one standard deviation. (R. at 232.)

Dr. Chaknis concluded that A.D. "in many ways shows a common ADHD presentation, [but he was] concerned there may be other factors contributing to his overall status." (R. at 233.) Dr. Chaknis noted "the marked variances in his cognitive abilities . . ., his periodically strange affect, and unusual motor actions." (R. at 233.) Dr. Chaknis assigned A.D. a Global Assessment of Functioning (GAF) score of 55-65,[6] and opined that his prognosis

---

[6]    The Global Assessment of Functioning (GAF) score is provided on Axis V of the multiaxial assessment format used by the American Psychiatric Association to identify mental disorders. Stoddard v. Astrue, No. EDCV 08-00994, 2009 WL 2030349, at *10 n.4 (C.D. Cal. July 8, 2009). A GAF score of 51 to 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed., text rev. 2000). A GAF score of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Id.

6

was "indeterminate." (R. at 232.)

2. Documents from Newport News Public Schools related to A.D.'s Individual Education Program (IEP). (R. at 108-31.)

On October 18, 2005, A.D. received an annual IEP. (R. at 117-28.) A.D. was in fourth grade when this IEP was adopted, but he tested at a first grade level in spelling, reading comprehension, and math. (R. at 117-18.) The plan indicated that A.D.'s strengths included being friendly, and getting along well with his peers; his weaknesses included reading comprehension, spelling, math, and written expression. (R. at 117.) A.D. was placed in a special education collaborative setting for language arts and math, but remained in general education for all other subjects. (R. at 127.)

On June 6, 2007, an IEP Addendum was issued, amending A.D.'s IEP to include participation in fifth grade Virginia Grade Level Assessment English and Math. (R. at 112.) The addendum also noted that A.D. was "best able to demonstrate knowledge of skills through means other than multiple-choice formatted testing." (R. at 117.)

Also available for the ALJ's consideration, but not specifically referenced in his decision,[7] was the following evidence:

---

[7] The Court notes that the ALJ's failure to specifically cite to this evidence does not imply that he did not consider all of the available evidence in making his decision. See Smith v. Barnhart, 59 F. App'x 901, 905 (7th Cir. 2003); Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000).

1. The report from a vision test conducted on December 2, 2003, indicating that A.D. has 20/20 vision. (R. at 162.)

2. A report indicating that A.D. passed a hearing test conducted on December 2, 2003. (R. at 161.)

3. The report of a Psycho-Educational Evaluation conducted by Dr. Wayne Douglas Smith, Ph.D., a licensed school psychologist, on January 16, 2004. (R. at 154-58.) Dr. Smith administered various tests and observed A.D. in his classroom. (R. at 154.) The report notes that on December 3, 2003, A.D.'s IEP was amended to change "his special education classification from Developmentally Delayed (DD) to Other Health Impaired (OHI)." (R. at 154.) When Dr. Smith observed A.D.'s classroom behavior, he noted that A.D. was "more inattentive than any other child in the room," and "was fidgety and very easily distracted." (R. at 155.) Although he was inattentive, Dr. Smith observed that A.D. "was not oppositional with the adults, and he was not aggressive with his classmates," and helped other children during the lesson. (R. at 155.) Results from the Behavior Assessment System for Children (BASC) indicated that A.D. "has more Hyperactivity than 99 percent of boys his age . . . [and] more Attention Problems than 94 percent of boys his age." (R. at 157.)

4. A Sociocultural Assessment Update conducted by Barbara Meredith, a school social worker, on February 1, 2004. (R. at 132-35.) The report indicates that A.D. was treated with medications

8

in the past, but while on the medications his behavior worsened, and he even set fires on two (2) occasions. (R. at 133.) Ms. Meredith noted that A.D. helped do chores at home, "generally gets along well with others," and "is cooperative . . . and considerate." (R. at 134.)

On June 17, 2008, the ALJ issued a decision, agreeing with the disability hearing officer, that A.D.'s "disability ended as of May 1, 2007, and [A.D.] has not become disabled again since that date." (R. at 13.) Specifically, the ALJ found that there had been medical improvement in A.D.'s condition as of May 1, 2007. (R. at 17.) The ALJ determined that since May 1, 2007, the impairments that A.D. suffered from at the time of the comparison point decision[8] in 2001 did not meet, medically equal, or functionally equal Listing 112.11. (R. at 17-23.) The ALJ found that A.D. had "no limitation" in two (2) domains of functioning, "less than marked limitation" in three (3) domains of functioning, and "a marked limitation" in only one (1) domain of functioning—attending and completing tasks. (R. at 19-23.) The ALJ then determined that since May 1, 2007, A.D. "has not had an impairment or combination of impairments that meets[,] medically equals [or functionally equals]" the Listings. (R. at 23-24.) Accordingly, the ALJ

---

[8] The "comparison point decision" refers to "the most recent favorable determination or decision" of the Social Security Administration. Social Security Ruling (SSR) 05-03p, 70 Fed. Reg. 21,833, 21,834 (Apr. 27, 2005).

concluded that A.D. was not disabled within the meaning of the Act. (R. at 24.) A.D. was twelve-years old at the time of the ALJ's decision. (R. at 17, 237.)

On August 2, 2008, Blaine requested review of the ALJ's decision by the Appeals Council of the Office of Hearings and Appeals ("Appeals Council"). (R. at 9.) The Appeals Council denied Blaine's request for review on June 12, 2009, stating that it found no reason to review or change the ALJ's decision. (R. at 6-8.) This makes the ALJ's decision the "final decision" of the Commissioner subject to judicial review here, pursuant to 42 U.S.C. § 405(g). See 20 C.F.R. § 416.1481.

Blaine brought the instant action seeking judicial review of the decision of the Commissioner terminating her son's supplemental security income payments. Blaine filed the instant Complaint on August 14, 2009,[9] which Defendant answered on October 24, 2009. Blaine filed a motion for summary judgment with a memorandum in support on January 5, 2010. Defendant filed a motion for summary judgment and in opposition to Blaine's motion for summary judgment

---

[9] Under the Social Security Act, a claimant may seek judicial review of a final decision of the Commissioner "by a civil action commenced within sixty days after the mailing to [her] of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g); see also 20 C.F.R. §§ 416.1481, 422.210(c). It appears that this action was timely filed, and the Commissioner does not assert otherwise. Nonetheless, the Court notes that Blaine requested an extension of time in which to file a civil action, which the Appeals Council granted on September 23, 2009. (R. at 3-4.)

10

with a memorandum in support on February 3, 2010. Neither party indicated special circumstances requiring oral argument in this matter; therefore, the case is deemed submitted for decision based on the memoranda. See Fed. R. Civ. P. 78(b); Local Civ. R. 7(J).

## II. **PLAINTIFF'S *PRO SE* PLEADINGS**

Blaine, the Plaintiff in this action, is proceeding *pro se* on behalf of her minor son, A.D.[10] A *pro se* litigant is entitled to a liberal reading of her pleadings. Jacobi v. Blocker, 153 F.R.D. 84, 86 (E.D. Va. 1994). Moreover, the Court notes that "trial courts are encouraged to liberally treat procedural errors made by *pro se* litigants, especially when a technical or arcane procedural rule is involved." Bauer v. Comm'r, 97 F.3d 45, 49 (4th Cir. 1996).

> Implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training. While the right "does not exempt a party from compliance with relevant rules of procedural and substantive law," it should not be impaired by harsh application of technical rules.

Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983). It is with this principle in mind that the Court construes the various pleadings

---

[10] By order dated December 3, 2009, the Court determined that Blaine was capable of prosecuting this social security appeal on behalf of her minor son without the assistance of an attorney. (Doc. No. 12.)

submitted by Plaintiff.

Taken together, the pleadings clearly indicate Blaine's belief
that the ALJ's determination that her son, A.D., ceased to be
disabled as of May 1, 2007, is not supported by substantial
evidence. Specifically, Blaine appears to argue that: (1) there
was no medical improvement in A.D.'s condition since the 2001
comparison point decision (Mem. Supp. Pl.'s Mot. Summ. J. 2
[hereinafter Pl.'s Mem. Supp.]); (2) A.D. continued to be disabled
due to his ADHD (Compl.; Pl.'s Mem. Supp. 2); and (3) A.D. was
disabled at the time of the ALJ's decision (Compl.; Pl.'s Mem.
Supp. 1-2).

## III. STANDARD FOR SUMMARY JUDGMENT

The Court shall grant summary judgment if, viewing the record
as a whole, it concludes "that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v.
Catrett, 477 U.S. 317, 322-24 (1986). For the evidence to present
a "genuine" issue of material fact, it must be "such that a
reasonable jury could return a verdict for the nonmoving party."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Facts
are deemed material if they might affect the outcome of the case.
Celotex Corp, 477 U.S. at 322-27. In other words, the moving
party's submission must foreclose the possibility of the existence
of facts from which it would be open to a jury to make inferences

12

favorable to the non-movant.  Id.

In deciding a summary judgment motion, the Court must "view[] the record as a whole in the light most favorable to the non-movant." Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). If "the evidence . . . is so one-sided that one party must prevail as a matter of law," the Court should grant summary judgment in that party's favor. Anderson, 477 U.S. at 251-52. Moreover, summary judgment must be granted where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," Celotex, 477 U.S. at 322, as the non-moving party is required to "set out specific facts showing a genuine issue for trial" with respect to that element, Fed. R. Civ. P. 56(e)(2).

When confronted with cross-motions for summary judgment, "the standards upon which the Court evaluates the motions for summary judgment do not change." Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991). "[T]he court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). "When deciding cross-motions for summary judgment, a district court retains the responsibility to examine the record to ensure that no

disputed issues of fact exist, despite the parties' assurances to that effect." Kavanaugh v. City of Phoenix, 25 F. App'x 516, 517 (9th Cir. 2001) (citing Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1134 (9th Cir. 2001).

**IV. STANDARD FOR REVIEW OF THE COMMISSIONER'S DETERMINATION**

The Commissioner ultimately held that as of May 1, 2007, A.D. ceased to be under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is "specific and narrow." Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g); Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam), superceded in non-relevant part by 20 C.F.R. § 404.1517(d)(2); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter, 993 F.2d at 34 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner has the duty "to make findings of fact and to resolve conflicts in the evidence." Hays, 907 F.2d at 1456 (citing

14

King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)). The Court "do[es] not conduct a *de novo* review of the evidence" or of the Commissioner's findings. Schweiker, 795 F.2d at 345. In reviewing for substantial evidence, the Court "do[es] not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Hays, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Id. (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. Richardson, 402 U.S. at 401. The issue before this Court, therefore, is not whether A.D. is disabled, but whether the Commissioner's finding that A.D. is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See id.; Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law.").

## V. **APPLICABLE LEGAL STANDARDS**

According to the Social Security Regulations, an individual under the age of 18 is "disabled" for the purpose of obtaining

15

supplemental security income under Title XVI of the Act if that individual has "a medically determinable physical or mental impairment[11] or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906; see also 42 U.S.C. § 1382c(a)(3)(C)(i). An individual has "marked and severe functional limitations" if the individual's impairment "meets, medically equals, or functionally equals" the severity of any listing in the Listing of Impairments found in 20 C.F.R., Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.902. However, "no individual under the age of 18 who engages in substantial gainful activity[12] . . . may be considered to be disabled." 42 U.S.C. § 1382c(a)(3)(C)(ii).

## A. The Comparison Point Decision (CPD)

The Commissioner follows a three-step sequential analysis to ascertain, in the first instance, whether a child is disabled and eligible to receive SSI benefits. See 20 C.F.R. § 416.924. First, the Commissioner must determine whether the child-claimant has

---

[11] "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

[12] "Substantial gainful activity means work that (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. § 416.910.

engaged in substantial gainful activity (i.e., whether the child was working) during the relevant period. 20 C.F.R. § 416.924(a)-(b). If so, the child-claimant is *not* disabled, and the inquiry is halted. Id. Second, if the child has not engaged in substantial gainful activity, the Commissioner must determine whether the child-claimant has a severe impairment (i.e., whether the claimant has an impairment that "causes more than minimal functional limitations"). Id. § 416.924(a), (c). If the child-claimant does not have a severe impairment, the child is *not* disabled, and the inquiry is halted. Id. Third, if the child does have a severe impairment, the Commissioner must determine whether that impairment meets, medically equals, or functionally equals the severity of any disorder specified in the Listing of Impairments,[13] 20 C.F.R., Part 404, Subpart P, Appendix 1 (the "Listings"). Id. § 416.924(a), (d). If so, the child-claimant *is* disabled. Id.

For purposes of the third step of the analysis, an impairment medically equals an impairment in the Listings if it is "at least of equal medical significance to those of a listed impairment." 20 C.F.R. § 416.926(b)(2). To assess functional equivalence, the Commissioner must evaluate "the child's limitations in six domains of functioning," Moten ex rel. Janisha C. v. Barnhart, No. 06 C 0824, 2007 WL 2875499, at *6 (N.D. Ill. Sept. 27, 2007), using a

---

[13]    "For children, [the Listing of Impairments] describes impairments that cause marked and severe functional limitations." 20 C.F.R. § 416.925(a).

four-point scale (i.e., "extreme, marked, less than marked, or no limitation"), <u>Baker ex rel. Baker v. Barnhart</u>, 410 F. Supp. 2d 757, 761 (E.D. Wis. 2005)). <u>See also</u> 20 C.F.R. § 416.926a(b)(1). The six domains of functioning to be assessed are: (1) "[a]cquiring and using information"; (2) "[a]ttending and completing tasks"; (3) "[i]nteracting and relating with others"; (4) "[m]oving about and manipulating objects"; (5) "[c]aring for yourself"; and (6) "[h]ealth and physical well-being." 20 C.F.R. § 416.926a(b)(1)(i)-(vi), (g)-(l). The child's impairment functionally equals the Listings if it "result[s] in 'marked'[14] limitations in two domains of functioning or an 'extreme'[15] limitation in one domain." 20 C.F.R. § 416.926a(a), (d).

In the instant case, the Commissioner determined at step one of the analysis that A.D. was not engaging in substantial gainful activity. (R. at 214.) At step two, the Commissioner found that A.D. suffered from the severe impairment of attention deficit hyperactivity disorder, as well as disruptive behavior disorder,

---

[14] Generally, a child experiences a 'marked' limitation if the child's "impairment(s) interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A 'marked' limitation is "a limitation that is 'more than moderate' but 'less than extreme.'" <u>Id.</u>

[15] Generally, a child experiences an 'extreme' limitation if the child's "impairment(s) interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I). An 'extreme' limitation is "a limitation that is 'more than marked.'" <u>Id.</u>

and a history of asthma. (R. at 214.) At the third, and final, step of the analysis, the Commissioner found that A.D.'s impairments met the criteria in Listing 112.11 for Attention Deficit Hyperactivity Disorder.[16] (R. at 214.) The disability examiner also assessed A.D.'s functional equivalence,[17] determining that A.D. had marked limitations in three (3) domains: attending and completing tasks, interacting and relating with others, and caring for yourself. (R. at 216-18.) Accordingly, on November 6, 2001, the Commissioner determined that A.D. was disabled and entitled to SSI benefits. (R. at 214-21.)

### B. The Continuing Disability Review (CDR) Decision

After the Commissioner awards SSI benefits to an individual under the age of 18 based upon "an impairment (or combination of impairments) which is likely to improve," the Commissioner must

---

[16] To find that A.D. met the criteria in Listing 112.11, the disability examiner had to find that A.D. met the requirements in paragraph A because he demonstrated "[m]arked inattention," "[m]arked impulsiveness," and "[m]arked hyperactivity." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.11(A). The examiner also had to find that A.D. met the requirements in paragraph B because his impairment resulted in at least two (2) of the criteria in paragraph B2 of Listing 112.02. Id. § 112.11(B). The examiner found that A.D. met three (3) of the paragraph B2 criteria, namely that he had "[m]arked impairment in age-appropriate social functioning," id. § 112.02(B)(2)(b); "[m]arked impairment in age-appropriate personal functioning," id. § 112.02(B)(2)(c); and "[m]arked difficulties in maintaining concentration, persistence, or pace," id. § 112.02(B)(2)(d). (R. at 214.)

[17] The Court notes that the disability examiner was not required to assess functional equivalence in this case because the examiner found that A.D.'s impairments met the criteria for Listing 112.11—Attention Deficit Hyperactivity Disorder.

periodically conduct an evaluation to determine if the individual remains eligible for benefits.[18] 42 U.S.C. § 1382c(a)(3)(H)(ii)(I). This process is referred to as a "continuing disability review." 20 C.F.R. § 416.989.

When performing the continuing disability review, the Commissioner utilizes a three-step medical improvement review standard (MIRS) to ascertain whether the child's disabling condition improved since the most recent favorable decision.[19] See 20 C.F.R. § 416.994a(a); Baker ex rel. Baker, 410 F. Supp. 2d at 761; Social Security Ruling (SSR) 05-03p, 70 Fed. Reg. 21,833, 21,833 (Apr. 27, 2005). First, the Commissioner must determine whether the child-claimant experienced medical improvement[20] in his disabling impairment since the comparison point decision. 20 C.F.R. § 416.994a(a)(1), (b)(1). If there has been *no* medical

---

[18]   The Social Security Act provides that "[n]ot less frequently than once every 3 years, the Commissioner shall review . . . the continued eligibility for benefits . . . of each individual who has not attained 18 years of age and is eligible for such benefits by reason of an impairment (or combination of impairments) which is likely to improve." 42 U.S.C. § 1382c(a)(3)(H)(ii)(I).

[19]   "The most recent favorable decision is the latest final determination or decision involving a consideration of the medical evidence and whether [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 416.994a(c)(1). This is referred to as the "comparison point decision." SSR 05-03p, 70 Fed. Reg. at 21,834.

[20]   "Medical improvement is any decrease in the medical severity of [the child-claimant's] impairment(s) which was present at the time of the most recent favorable decision that [the child claimant was] disabled or continued to be disabled." 20 C.F.R. § 416.994a(c).

20

improvement, the child-claimant *continues* to be disabled, unless an exception applies. Id. Second, if the comparison point decision was made on or after January 2, 2001,[21] and there has been medical improvement in the child's condition, the Commissioner must determine whether the impairment the child-claimant had at the comparison point decision now meets or medically equals the same Listing that it met or medically equaled at the time of the comparison point decision, or whether the impairment functionally equals the Listings. Id. § 416.994a(a)(1), (b)(2); SSR 05-03p, 70 Fed. Reg. at 21,834. If so, the child-claimant *continues* to be disabled, unless an exception applies. 20 C.F.R. § 416.994a(a)(1), (b)(2). Third, if the child's impairment no longer meets or medically equals the same Listing that it met or equaled at the time of the comparison point decision, and does not functionally equal the Listings, the Commissioner must determine whether the child-claimant is currently disabled under the three-step sequential analysis in 20 C.F.R. § 416.924 for determining whether a child is disabled in the first instance. Id. § 416.994a(a)(1), (b)(3). If not, the child-claimant *ceases* to be disabled, and benefits are terminated. Id.

---

[21]     Effective January 2, 2001, the Social Security Administration changed its rules for evaluating functional equivalence. SSR 05-03p, 70 Fed. Reg. at 21,834. Therefore, the proper analysis to be applied at "step 2 of the MIRS sequential evaluation process for children depends on the date of and basis for the CPD." Id.

21

For purposes of steps one and two of the analysis, there are two (2) groups of exceptions that, if applicable, may terminate benefits even absent medical improvement. The Commissioner will find that a Group 1 exception applies if: (1) "[s]ubstantial evidence shows that, based on new or improved diagnostic techniques or evaluations, [the claimant's] impairment(s) is not as disabling as it was considered to be at the time of the most recent favorable decision," id. § 416.994a(e)(1); or (2) "[s]ubstantial evidence demonstrates that any prior disability decision was in error," id. § 416.994a(e)(2). If a Group 1 exception applies, the Commissioner will assess whether the claimant is currently disabled, considering all impairments. Id. § 416.994a(e). The Commissioner will find that a Group 2 exception applies if: (1) "[a] prior determination or decision was fraudulently obtained," id. § 416.994a(f)(1); (2) the claimant, without good cause, fails to cooperate with the Social Security Administration, id. § 416.994a(f)(2); (3) the Social Security Administration is unable to find the claimant, id. § 416.994a(f)(3); or (4) the claimant "fail[s] to follow prescribed treatment which would be expected to improve [the claimant's] impairment(s) so that it no longer results in marked and severe functional limitations," id. § 416.994a(f)(4). If a Group 2 exception applies, the claimant's benefits are terminated without further inquiry into whether the claimant is currently disabled. Id. § 416.994a(f).

## VI. **ANALYSIS**

Blaine alleges that the ALJ's decision, finding that A.D.'s disability ceased on May 1, 2007, is not supported by substantial evidence because: (1) there was no medical improvement in A.D.'s condition between the 2001 comparison point decision and May 1, 2007, the date A.D.'s disability allegedly ceased (Pl.'s Mem. Supp. 2); (2) A.D. continued to be disabled since 2001 (Compl.; Pl.'s Mem. Supp. 2); and (3) A.D. was disabled at the time of the ALJ's decision (Compl.; Pl.'s Mem. Supp. 1-2). These arguments are addressed in turn.

As discussed below, the Court FINDS that there is substantial evidence in the record to support the ALJ's findings that there was medical improvement in A.D.'s condition as of May 1, 2007, that A.D.'s impairment no longer met Listing 112.11, and that A.D. was not disabled at the time of the ALJ's decision. Accordingly, the Court RECOMMENDS that the Commissioner's decision be AFFIRMED.

### A. **Medical Improvement**

Blaine alleges that the ALJ's finding of medical improvement as of May 1, 2007, is not supported by substantial evidence. (Pl.'s Mem. Supp. 1.) Blaine argues that A.D. "remains to be in the same condition now as he was at the time when he was considered []eligible," and that "since [her] initial application for SSI in 2001[, A.D.'s] condition of ADHD has not changed." (Pl.'s Mem. Supp. 1-2.) In reviewing the ALJ's determination that there was

23

medical improvement in A.D.'s condition, "the court's function . . . is limited to determining whether substantial evidence exists in the record to support the ALJ's findings." Watkins v. Astrue, No. 2:08cv56, 2009 WL 3855756, at *17 (W.D. Va. Nov. 17, 2009). For the reasons stated herein, the Court FINDS that the ALJ's determination that A.D.'s condition medically improved is supported by substantial evidence.

At step one of the continuing disability review, the ALJ must determine whether the child experienced medical improvement in his disabling impairment since the comparison point decision. 20 C.F.R. § 416.994a(a)(1), (b)(1). "Medical improvement" is defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable decision that [the claimant was] disabled or continued to be disabled." Id. § 416.994a(c). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, or laboratory findings associated with [the claimant's] impairment(s)." Id. "[T]he key question is not whether the claimant still suffered from the same medical problem he had when benefits were awarded, but whether the severity of the problem had decreased sufficiently to enable him to engage in gainful activity." Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).

"In determining whether substantial evidence supports the

24

Commissioner's decision, the court . . . must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence." Watkins, 2009 WL 3855756, at *17. In finding that there was medical improvement in A.D's condition since 2001, the ALJ relied on the May 2007 consultative examination, A.D.'s school records, and Blaine's testimony at both the reconsideration hearing and the hearing before the ALJ. The ALJ noted that there was no evidence of behavioral problems in A.D.'s school records since May 2007, and that A.D.'s mother reported that he got along well with his younger sister and other children his age. (R. at 17.) The ALJ also noted that during the consultative examination conducted by Dr. Chaknis on May 2, 2007, A.D. "established ready rapport with the examiner," but he indicated that he is sometimes teased at school by his classmates. Id. Based on this evidence, the ALJ concluded that A.D. had experienced medical improvement in his ability to interact and relate to others since 2001, when he "had marked difficulty in this domain."[22] Id.

---

[22] The Court notes that while the ALJ's explanation for finding that A.D.'s condition medically improved focused on A.D.'s improvement in the domain of interacting and relating with others (R. at 17), elsewhere in the decision the ALJ determined that A.D. had a less than marked limitation in the domain of caring for yourself (R. at 22-23), which is an improvement from 2001, when the Commissioner concluded that A.D. had a marked limitation in that domain (R. at 218). Because the improvement in interacting and relating with others is sufficient to support a finding of medical improvement, the Court will not endeavor to more fully analyze the improvement in self-care at this juncture.

A review of the record in this case supports the ALJ's finding of medical improvement as of May 1, 2007. In fact, the evidence suggests that A.D.'s condition was improving even before May 1, 2007. In 2001, the Commissioner's decision awarding SSI benefits noted that A.D. seldom got along with others at school, that his social development was not age-appropriate, and that he had a history of stealing and setting fires. (R. at 217.) The evaluations conducted in 2001 in connection with assessing A.D.'s disability application reported that A.D. exhibited difficulty relating to his peers (R. at 196), was oppositional towards his teachers (R. at 211-12), was unable to relate to the evaluating psychologist (R. at 212), and was often irritable (R. at 184-86, 188-89). Based on this information, the Commissioner determined that A.D. had a marked limitation in his ability to interact and relate to others. (R. at 217.) In comparison, the evaluations and school records from January 2004 through May 2007 reflect that A.D. was "not oppositional with the adults, and he was not aggressive with his classmates" (R. at 155), that he "is an outgoing, playful youngster" (R. at 134), that he "generally gets along well with others, [and] he is cooperative in play and considerate" (R. at 134), that he was "friendly and easy to work with" (R. at 120), that he seemed to establish ready rapport with the evaluating psychologist (R. at 231), and that he participated in Bible study (R. at 134), a program called "Men of Distinction" (R. at 230), and

26

was recently enrolled in Cub Scouts (R. at 134). Considering this evidence, the ALJ concluded that A.D. had a "less than marked limitation in interacting and relating with others." (R. at 21.) Accordingly, the Court FINDS that the ALJ's determination that A.D. had a less than marked limitation in the domain of interacting and relating with others, and thus the ALJ's conclusion that there was medical improvement in A.D.'s condition are supported by substantial evidence.

## B. Continued Disability

Blaine alleges that the ALJ's finding that A.D. ceased to be disabled as of May 1, 2007, is not supported by substantial evidence. Blaine argues that A.D. continues to be disabled because he receives an IEP, he is below grade level at school, and he is "easily distracted, impulsive, mentally busy, and at times sad." (Compl. 1.) Blaine argues that because of his impairment, A.D. suffers from "impulsivity, behavioral concerns, inability to focus for longer than five minute increments, lack of comprehension and grade level studies in all academic areas especially in [E]nglish, reading, and math." (Pl.'s Mem. Supp. 1.) For the reasons stated herein, the Court FINDS that the ALJ's determination that A.D.'s disability ceased as of May 1, 2007, is supported by substantial evidence.

At step two of the continuing disability review, if the ALJ determines that there has been medical improvement, then he must

27

determine if the impairment(s) the claimant had at the time of the comparison point decision is still disabling.[23]    20 C.F.R. § 416.994a(a)(1), (b)(2).   If the CPD "was based . . . on a finding that the child's impairment(s) met or medically equaled a listing, . . . [the ALJ must determine] whether the CPD impairment(s) now either meets or medically equals that same listing, as it was written at that time."   SSR 05-03p, 70 Fed. Reg. at 21,834.   If not, or if the CPD was based on a finding that the child's impairment(s) functionally equaled the Listings, the ALJ must "determine whether the CPD impairment(s) now functionally equals the listings."   Id.   If so, the child _continues_ to be disabled. Id.; 20 C.F.R. § 416.994a(a)(1), (b)(2).

## 1.    Listing 112.11

The November 6, 2001 comparison point decision was based on the Commissioner's finding that A.D.'s impairments met the criteria in Listing 112.11 for Attention Deficit Hyperactivity Disorder. (R. at 31, 214.)    According to Listing 112.11, attention deficit hyperactivity disorder is "[m]anifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity."   20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.11.   In order to meet the criteria of Listing 112.11, there must be

---

[23]   The step two analysis discussed in this section applies to cases in which the comparison point decision was made on or after January 2, 2001.    SSR 05-03p, 70 Fed. Reg. at 21,833-34.    The comparison point decision in the instant case was made on November 6, 2001.    (R. at 31.)

28

"[m]edically documented findings of all three of the following: 1. [m]arked inattention; and 2. [m]arked impulsiveness; and 3. [m]arked hyperactivity," and "for children (age 3 to attainment of age 18), [an impairment] resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02." Id. The four (4) categories of impairments found in paragraph B2 of 112.02 are: (1) "[m]arked impairment in age-appropriate cognitive/communicative function,"[24] (2) "[m]arked impairment in age-appropriate social functioning,"[25] (3) "[m]arked impairment in age-appropriate personal functioning,"[26] and (4) "[m]arked difficulties in maintaining concentration, persistence, or pace."[27]

---

[24] Impairment in cognitive or communicative functioning is characterized by "a valid verbal, performance, or full scale IQ of 70 or less," and difficulties in "language development or bizarre speech patterns." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.00(C)(2)(a).

[25] "Social functioning refers to a child's capacity to form and maintain relationships with parents, other adults, and peers." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.00(C)(2)(b). Appropriate social functioning includes the "ability to respond to and initiate social interaction with others, to sustain relationships, and to participate in group activities." Id. Appropriate development may also be demonstrated by "[c]ooperative behaviors, consideration for others, [and] awareness of others' feelings." Id. Impaired social functioning may be demonstrated by aggressive behaviors, running away, or social isolation. Id.

[26] Personal functioning refers to a child's capacity to take care of himself or herself, to include attending to personal hygiene, grooming, eating, and "following safety precautions." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.00(C)(2)(c).

[27] "[D]eficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner, is to identify the child who cannot adequately function in primary school

29

Id. § 112.02(B)(2).

At the continuing disability review, the ALJ found that "[s]ince May 1, 2007, the impairments that the claimant had at the time of the CPD have not met or medically equaled section(s) 112.11 or 112.02 of 20 CFR Part 404, Subpart P, Appendix 1 as that listing was written at the time of the CPD." (R. at 17.) The ALJ based his finding on the fact that A.D. "has not been under any medical evaluation or treatment [since] May 2007." Id.

To meet a specified Listing, there must be medical evidence documenting the required symptoms or criteria. In this case, there was no evidence of medical evaluations or treatment, other than the mental evaluation conducted by Dr. Chaknis,[28] for the period from May 1, 2007, through the ALJ's decision on June 17, 2008.[29]

---

because of a mental impairment." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.00(C)(3). "[G]rades and the need for special education placement are relevant factors which must be considered, . . . [but] they are not conclusive." Id.

[28] The consultative examination conducted by Dr. Chaknis was performed at the request of the Division of Disability Services (DDS). (R. at 228.)

[29] During the continuing disability review, it is the claimant's responsibility to "provide [the Social Security Administration] with reports from [the claimant's] physician, psychologist, or others who have treated or evaluated [the claimant], as well as any other evidence that will help [the Social Security Administration] determine if [the claimant] is still disabled." 20 C.F.R. § 416.993(b); see also id. § 416.912. The claimant "must have a good reason for not giving [the Social Security Administration] this information or [the Social Security Administration] may find that [the claimant's] disability has ended." Id. § 416.993(b).

Furthermore, although the ALJ's specific explanation relied on the lack of medical documentation, the ALJ provides a more elaborate discussion of A.D.'s condition in other parts of his decision, which also supports a finding that A.D.'s condition did not meet Listing 112.11 as of May 1, 2007.

In order to meet the criteria in Listing 112.11, A.D. must have demonstrated marked impairments in two of the four categories set forth in Listing 112.02(B)(2). Although A.D. had marked difficulties in maintaining concentration, persistence, and pace, there is evidence to support a finding that as of May 1, 2007, he did not have marked impairments in cognitive/communicative function, social functioning, or personal functioning. With regard to cognitive functioning, the record reveals that A.D. receives special education services and performs below grade level in some subjects, but his mother reported that his grades have improved and he has been on the Honor Roll. (R. at 117-28, 154-58, 234-57.) Although A.D.'s intelligence tests consistently reveal scores below 70, the results have been considered an underestimate of his abilities because of his inattention and hyperactivity. (R. at 19, 130, 154-58, 228-33.) Additionally, his speech was "spontaneous, fluent and mostly articulate." (R. at 231.) This evidence suggests that A.D. had a less than marked impairment in cognitive and communicative function. As discussed in Section VI(A), A.D. had a less than marked impairment in his ability to form and

sustain relationships with adults and his peers, demonstrated an ability to cooperate, and participated in group activities. (R. at 120, 134, 155, 230-31.) Finally, A.D. had a less than marked limitation in personal functioning. A.D. was well groomed, his "[s]leep and appetite are good," and he helped take care of his baby sister. (R. at 231.) The only hygiene issue noted in the record is his recent tendency to wet the bed, which is attributed to the instability in his living situation. (R. at 252-53.) Accordingly, the Court FINDS that there is substantial evidence to support the ALJ's conclusion that as of May 1, 2007, A.D. no longer met or medically equaled Listing 112.11.

## 2. Functional Equivalence

After determining that A.D.'s impairment no longer met or medically equaled Listing 112.11, the ALJ had to assess whether A.D.'s impairment functionally equaled the Listings. SSR 05-03p, 70 Fed. Reg. at 21,834. A child's impairment functionally equals the Listings if it "result[s] in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a), (d). The six (6) domains, which represent "broad areas of functioning intended to capture all of what a child can or cannot do," are: (1) "[a]cquiring and using information"; (2) "[a]ttending and completing tasks"; (3) "[i]nteracting and relating with others"; (4) "[m]oving about and manipulating objects"; (5) "[c]aring for yourself"; and (6) "[h]ealth and

32

physical well-being." Id. § 416.926a(b)(1).

In the instant case, the ALJ concluded that A.D.'s impairment did not functionally equal the Listings because he had a marked limitation in only one domain, and did not have an extreme limitation in any domain. (R. at 17.) The ALJ determined that A.D. had a marked limitation in the domain of attending and completing tasks; less than marked limitations in the domains of acquiring and using information, and interacting and relating with others, and caring for yourself; and no limitations in the domains of moving about and manipulating objects, and health and physical well-being. (R. at 19-23.)

As discussed above in Section VI(A), there is substantial evidence to support the ALJ's conclusion that A.D. had a less than marked limitation in the domain of interacting and relating with others. There is also substantial evidence in the record to support the ALJ's conclusions regarding the other five (5) domains.

The ALJ determined that A.D. had a marked limitation in the domain of attending and completing tasks. This domain "consider[s] how well [the child is] able to focus and maintain [his] attention, and how well [he is able to] begin, carry through, and finish [his] activities, including the pace at which [he] perform[s] activities." 20 C.F.R. § 416.926a(h). A.D. is consistently described as overactive, inattentive, and distracted (R. at 130, 154-58), and Dr. Chaknis observed that "[h]is attentional focus and

33

maintenance was quite variable," and "[h]is work pace was erratic" (R. at 231.) However, A.D. was able to complete tasks after redirection, help with chores around the house, and assist his mother with caring for his baby sister. (R. at 231, 244-45.) Accordingly, there is substantial evidence to support a finding that A.D. had a marked, but not extreme, limitation in attending and completing tasks.

The ALJ concluded that A.D. had a less than marked limitation in the domain of acquiring and using information. This domain "consider[s] how well [the child] acquire[s] or learn[s] information, and how well [the child] use[s] the information." 20 C.F.R. § 416.926a(g). A.D. has difficulty with comprehension and math skills, for which he receives special education services. (R. at 117-28, 154-58, 234-57.) However, he is "able to demonstrate knowledge of skills through means other than multiple-choice formatted testing" (R. at 112), and receives good grades at school (R. at 246). Accordingly, there is substantial evidence to support a finding that A.D. had a less than marked limitation in acquiring and using information.

The ALJ found that A.D. had a less than marked limitation in the domain of self-care. This domain "consider[s] how well [the child] maintain[s] a healthy emotional and physical state, including how well [the child] get[s] [his] physical and emotional wants and needs met in appropriate ways." 20 C.F.R. § 416.926a(k).

34

A.D. demonstrated appropriate grooming, sleeping, and eating behaviors. (R. at 231.) There were also no reports of self-injurious behaviors. Id. The only reported issue was A.D.'s recent bed wetting, which may be related to his unstable living situation. (R. at 252-53.) Accordingly, there is substantial evidence to support a finding that A.D. had a less than marked limitation in caring for himself.

The ALJ determined that A.D. had no limitation in moving about and manipulating objects. This domain "consider[s] how [the child] move[s] [his] body from one place to another and how [he] move[s] and manipulate[s] things." 20 C.F.R. § 416.926a(j). There is no evidence that A.D. had difficulty with either gross or fine motor skills. Accordingly, there is substantial evidence to support a finding that A.D. had no limitation in moving about and manipulating objects.

Finally, the ALJ concluded that A.D. had no limitation in health and physical well-being. This domain "consider[s] the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on [the child's] functioning." 20 C.F.R. § 416.926a(l). A.D. is in good health and there are no reported problems in this domain. A.D.'s vision and hearing are normal, and although A.D. has a history of asthma, there is no evidence that it interferes with his ability to function. (R. at 161-62, 229.) Accordingly, there is substantial

evidence to support a finding that A.D. had no limitation in health and physical well-being.

The Court FINDS that there is substantial evidence to support the ALJ's conclusion that A.D.'s impairments did not functionally equal the Listings as of May 1, 2007, because he did not have marked limitations in two domains, or an extreme limitation in one domain.

### C. Current Disability

Blaine argues that A.D.'s disability never ceased, and therefore, by implication, he is currently disabled. Blaine further alleges that she "recently reapplied for assistance from [the] Social Security Administration and [A.D.] was approved effective October 2009." (Pl.'s Mem. Supp. 1.) For the reasons stated herein, the Court FINDS that the ALJ's determination that A.D. was not disabled at the time of the ALJ's June 17, 2008 decision is supported by substantial evidence.

At step three of the continuing disability review, if the ALJ determines that there has been medical improvement, that the claimant's disabling impairment no longer meets or medically equals the same Listing that it did at the time of the comparison point decision, and that the impairment does not functionally equal the Listings, he must determine whether the claimant is currently disabled using the sequential analysis set forth in 20 C.F.R. § 416.924(c). 20 C.F.R. § 416.994a(a)(1), (b)(3). The ALJ must

determine whether the child has a severe impairment, considering all of the child's impairments at the time of the continuing disability review, not just those impairments that were present at the comparison point decision. Id. § 416.994a(b)(3). If the child does not have a severe impairment, the child is *not* disabled, and benefits are terminated. Id. § 416.994a(b)(3)(i). If the child does have a severe impairment, the ALJ must determine whether that impairment meets or medically equals the severity of any disorder in the Listings. Id. § 416.994a(b)(3)(ii). If so, the child *is* disabled. Id. If the child's impairments do not meet or medically equal a Listing, the ALJ must determine whether the impairments functionally equal the Listings. Id. § 416.994a(b)(3)(iii). If not, the child *is not* disabled, and benefits are terminated. Id.

The ALJ found that A.D. did not have any impairments that were not considered at the CPD. (R. at 23.) Accordingly, the only impairments that A.D. had at the time of the ALJ's decision were attention deficit hyperactivity disorder, disruptive behavior disorder, and a history of asthma. As discussed above in Section VI(B), there is substantial evidence in the record to support the conclusion that A.D.'s ADHD did not meet or medically equal Listing 112.11, and that his condition was not functionally equivalent to the Listings because he had a marked limitation in only one domain, and no extreme limitations.

In support of her position, Blaine argues that she "recently

reapplied for assistance from [the] Social Security Administration and [A.D.] was approved effective October 2009." (Pl.'s Mem. Supp. 1.) Because this evidence was not originally before the ALJ, the Court can remand the case to consider the evidence, but only if the evidence is relevant to the disability determination, the evidence is material to the ALJ's decision,[30] and there is good cause for the failure to present the evidence to the ALJ. <u>Miller v. Barnhart</u>, 64 F. App'x 858, 859 (4th Cir. 2003); <u>Washington v. Comm'r Soc. Sec.</u>, No. 2:08cv93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); <u>Brock v. Sec'y Health & Human Servs.</u>, 807 F. Supp. 1248, 1250 (S.D. W. Va. 1992). The decision currently before the Court considered whether A.D. was disabled from May 1, 2007, through June 17, 2008. However, the subsequent decision of the Commissioner, which Blaine seeks to introduce, concluded that A.D. was disabled effective October 2009, which is more than one (1) year after the relevant period of time considered in the decision currently under review. The Court cannot take into consideration the later finding by the Commissioner that A.D. was disabled, and cannot remand the case to the ALJ to consider this evidence, because it relates to a time period subsequent to the ALJ's decision and, therefore, is not material to the ALJ's decision. <u>See</u> <u>Brock v. Heckler</u>, 612 F. Supp. 1348, 1354 (D.S.C. 1985) (stating that remand is inappropriate if

---

[30] "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." <u>Wilkins v. Sec'y Dep't Health & Human Servs.</u>, 953 F.2d 93, 96 (4th Cir. 1991).

the new "evidence does not relate to plaintiff's condition at the time of the Secretary's decision").

Based on the foregoing, the Court FINDS that there is substantial evidence in the administrative record to support the ALJ's determination that as of May 1, 2007, A.D.'s condition was not disabling.

## C. Conclusion

For the reasons discussed above, the Court FINDS that there is substantial evidence in the record to support the ALJ's finding that A.D.'s condition medically improved as of May 1, 2007. The Court further FINDS that there is substantial evidence to support the ALJ's finding that A.D. ceased to be disabled as of May 1, 2007. Accordingly, the Court RECOMMENDS that the Commissioner's decision be AFFIRMED.

## VII. RECOMMENDATION

For the foregoing reasons, the Court recommends that Plaintiff's Motion for Summary Judgment (Doc. No. 13) be DENIED, that Defendant's Motion for Summary Judgment (Doc. No. 15) be GRANTED, and that the decision of the Commissioner be AFFIRMED.

## VIII. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1):

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and

recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to another party's specific objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140, 153-54 (1985); Carr v. Hutto, 737 F.2d 433, 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).

F. Bradford Stillman

United States Magistrate Judge

Norfolk, Virginia

June 3, 2010

### CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to the following:

Rashiyda Blaine
P.O. Box 197
Newport News, Virginia 23607
*Pro Se*

Lawrence Richard Leonard, Esq.
Office of the United States Attorney
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
Lead Counsel for Defendant

Virginia Lynn Van Valkenburg, Esq.
Office of the United States Attorney
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
Counsel for Defendant

Fernando Galindo,
Clerk of Court

By: _____
Deputy Clerk

June 3, 2010